# EXHIBIT A

Skip to Main Content   Logout   My Account   My Cases   Search Menu   New Civil Search   Refine Search   Back          Location : All Courts   Images Help

# REGISTER OF ACTIONS
## CASE NO. 19-11-14832

| | | |
|---|---|---|
| **Isiah Kellup VS. Bank of America, N.A.** | § <br> § <br> § <br> § <br> § | Case Type: **Foreclosure - Other Foreclosure** <br> Date Filed: **10/31/2019** <br> Location: **284th Judicial District Court** |

---

### RELATED CASE INFORMATION

**Related Cases**
  18-04-05443 (Related Parties)

---

### PARTY INFORMATION

| | | | **Attorneys** |
|---|---|---|---|
| **Defendant** | **Bank of America, N.A.** <br> Dallas, TX 75201 | | |
| **Plaintiff** | **Kellup, Isiah** <br><br> Spring, TX 77386 | | **Kerry Prisock** <br> *Retained* <br> 713-840-7570(W) |

---

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | |
|---|---|
| 10/31/2019 | **Original Petition (OCA)** |
| 10/31/2019 | **E-Filed Original Petition Document** |
| 10/31/2019 | **Request For Service** |
| 11/05/2019 | **Injunction or Show Cause (OCA)** |
| 11/05/2019 | **E-Notice Envelope Number:** |
| 11/05/2019 | **Certified Mail Citation** |
| | Bank of America, N.A.        Served         11/08/2019 |
| | Returned         11/13/2019 |
| 11/05/2019 | **Temporary Restraining Order** |
| | Bank of America, N.A.        Unserved |
| 11/13/2019 | **Motion (No Fee)** |
| 11/13/2019 | **Proposed Order** |
| 11/13/2019 | **Proposed Order** |
| 11/15/2019 | **Motion Hearing**  (1:30 PM) (Judicial Officer Bays, Kristin) |

---

### FINANCIAL INFORMATION

| | | | | |
|---|---|---|---|---|
| | **Plaintiff** Kellup, Isiah | | | |
| | Total Financial Assessment | | | 486.00 |
| | Total Payments and Credits | | | 486.00 |
| | **Balance Due as of 11/14/2019** | | | **0.00** |
| 11/01/2019 | Transaction Assessment | | | 480.00 |
| 11/01/2019 | E-File Electronic Payment | Receipt # 2019-250650 | Kellup, Isiah | (480.00) |
| 11/05/2019 | Transaction Assessment | | | 2.00 |
| 11/05/2019 | Payment | Receipt # 2019-251002 | Prisock, Kerry | (2.00) |
| 11/05/2019 | Transaction Assessment | | | 4.00 |
| 11/05/2019 | Payment | Receipt # 2019-251013 | Prisock, Kerry | (4.00) |

Received and E-Filed for Record
10/31/2019 6:01 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Sommer Brinkley

CAUSE NO. _____    19-11-14832

| | | |
|---|---|---|
| **ISIAH KELLUP** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| v. | § | **MONTGOMERY COUNTY, TEXAS** |
| | § | Montgomery County - 284th Judicial District Court |
| **BANK OF AMERICA, N.A.** | § | _____ **JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION, APPLICATION FOR INJUNCTIVE RELIEF, AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Isiah Kellup, Plaintiff herein, filing this his Original Petition, Application for Injunctive Relief, and Request for Disclosures complaining of Bank of America, N.A., Defendant herein, and for causes of action would respectfully show the Court as follows:

### DISCOVERY

1.    Plaintiff intends to conduct discovery under Texas Rules of Civil Procedure 190.3 (Level 2).

### PARTIES

2.    Isiah Kellup is an individual who resides in Montgomery County, Texas and may be served with process on the undersigned legal counsel.

3.    Bank of America, N.A. is an entity formed under the laws of the state of North Carolina which may be served with process on its registered agent as follows:

Bank of America, N.A.
c/o CT Corporation System
1999 Bryan Street, Suite 900
Dallas, TX 75201

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over Bank of America, N.A. because the Defendant is an entity formed under the laws of the State of North Carolina which conducts business in Montgomery, Texas.

5.     The Court has jurisdiction over the controversy because the damages are within the jurisdictional limits of the Court. Venue is mandatory in Montgomery County, Texas because the subject matter of this lawsuit involves real property which is located in Montgomery County, Texas. Further, all or a substantial part of the events or omissions giving rise to Plaintiff's causes of action occurred in Montgomery County, Texas thus venue is proper under §15.002(a)(1) of the Texas Civil Practice and Remedies Code.

## RELEVANT FACTS

6.     The subject matter of this lawsuit is the real property and the improvements thereon located at 29711 Legends Green Drive, Spring, Texas 77386 (the "Property").

7.     Isiah Kellup ("Kellup") and his ex-wife, Renata Kellup, purchased the Property on or about October 19, 2007. During the process of purchasing the Property, Kellup executed a Note in the amount of $196,654.00 as well as a Deed of Trust from Mortgage Electronic Registration Systems, Inc. ("MERS") through an FHA loan (FHA Case No. TX4938450814-703). A true and correct copy of the Deed of Trust is attached hereto as Exhibit "1" and incorporated herein for all purposes. Upon information and belief, the Note and related Deed of Trust were subsequently transferred to Bank of America, N.A. ("BOA") in which also acts as the loan servicer.

8.     Kellup requested loss mitigation assistance from BOA and had attempted to obtain a workable modification on several occasions. BOA failed to comply with federally mandated counseling and loss mediation procedures prior to posting the Property for sale. Furthermore, BOA

failed to provide proper notice of acceleration and opportunity to cure pursuant to the Texas Property Code.

9.      Accordingly, Plaintiff alleges that BOA is about to wrongfully sell his Property at a foreclosure sale on November 5, 2019 without providing the required notices and in violation of Kellup's due process rights.

## FIRST CAUSE OF ACTION:
## BREACH OF CONTRACT

10.     To the extent not inconsistent herewith, Kellup incorporates by reference the allegations made in paragraphs 1 through 9 as if set forth fully herein.

11.     Because Kellup's Loan is an FHA loan, a default under the Deed of Trust is limited by regulations promulgated by the Department of Housing and Urban Development ("HUD"). Specifically, the Deed of Trust states that the "Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument." (Ex. 1 at ¶9). Thus, by the express terms of the Deed of Trust, BOA was not permitted to accelerate or foreclose unless in accordance with and permitted by the HUD regulations. BOA violated the provisions of the Deed of Trust by failing to comply with the HUD regulations—thus, resulting in breach of contract. The HUD regulations are part of an integrated contract to which BOA was bound to comply. See Hernandez v. Home Sav. Ass'n, 606 F.2d 596, 600–01 (5th Cir. 1979) (holding that the mortgage documents and the HUD regulations are an integrated contract); see also Baker v. Countrywide Home Loans, Inc., No. 3:08-CV-0916-B, 2009 WL 1810336 at *5 (N.D. Tex. Jan. 24, 2009). 30. In Baker, the United States District Court for the Northern District of Texas held that failure to comply with the HUD regulations may give rise to liability on a contract theory when the parties incorporated the terms into their contract.

12.     A mortgagee or servicer acting on behalf of a mortgagee (for simplicity hereinafter referred to as "lender") of an FHA loan must conduct a face-to-face interview with the borrower or make a reasonable effort to arrange such a meeting before three full monthly installments due on the mortgage went unpaid. See 24 C.F.R. § 203.604(b). A reasonable effort consists of a letter sent by certified mail to the borrower and requires at least one trip to see the borrower at her property. A lender is also required to inform the borrower of other available assistance. Id. § 203.604(e)(2).

13.     As a proximate result of the foregoing wrongful conduct by BOA, Kellup has incurred damages. Kellup lost time and money in trying to stop the wrongfully scheduled foreclosure. He also incurred court costs and reasonable and necessary attorneys' fees, of which he seeks recovery. Accordingly, Kellup requests that the Court find that BOA breached the Deed of Trust.

## SECOND CAUSE OF ACTION:
## VIOLATION OF TEXAS PROPERTY CODE §51

14.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraphs 1 through 13 as if set forth fully herein.

15.     Pursuant to the provisions of the Texas Property Code, the holder of a note must ordinarily give notice to the maker of the holder's intent to accelerate the time for payment as well as notice of acceleration. If the mortgagee intends to accelerate the maturity of the debt, the notice must unequivocally inform the mortgagor of the mortgagee's intention. A proper notice of default must give the borrower notice that the alleged delinquency must be cured; otherwise, the loan will be accelerated, and the property will go to foreclosure. Prior to a foreclosure action, the noteholder is also required to give the homeowners clear and unequivocal acceleration notice. Effective acceleration requires two acts: notice of intent to accelerate and notice of acceleration.

16.     The actions committed by BOA constitute violations of the Texas Property Code §51 because BOA never sent proper and timely notice of default, the opportunity to cure the default, notice of intent to accelerate the debt, notice of acceleration, and notice of foreclosure sale which are required in order for BOA to foreclose on its lien rights to the Property.

## THIRD CAUSE OF ACTION:
## VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT

17.     To the extent not inconsistent herewith, Kellup incorporates by reference the allegations made in paragraphs 1 through 16 as if set forth fully herein.

18.     This includes an action for violations of the Texas Debt Collection Act ("TDCA") against Defendant. *See* Tex. Fin. Code §§ 392.001 et seq.

19.     Plaintiff is a "consumer" within the meaning of Section 392.001 of the Texas Finance Code, and the debt in question relating to the Property is a "consumer debt" within the meaning of such statute.

20.     Defendant is a debt collector. "Debt collection" is defined as the act or practice "in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." A "debt collector" therefore includes a creditor who is collecting its own debt. *Smith v. Heard*, 980 S.W.2d 693, (Tex. App.—San Antonio, 1998, pet. denied) (A creditor is not excused from following the provisions of the TDCA on the basis that the debt is owed directly to the creditor).

21.     The acts, omissions, and conduct of Defendant, as alleged above, herein, and below, constitute violations of the following provisions of the TDCA:

> a. Threatening to take an action prohibited by law, specifically seeking to sell the Property at a foreclosure sale in violation of state law. *See* Tex. Fin. Code §§ 392.301(a)(8).

b. Using a fraudulent, deceptive, or misleading representation that misrepresent[s] the character, extent, or amount of a consumer debt." Tex. Fin. Code § 392.304(a)(8).

c. Misrepresenting the status or nature of the services rendered by the debt collector. *See* Tex. Fin. Code § 392.304(a)(14).

d. Using other false representation or deceptive means to collect a debt. *See* Tex. Fin. Code § 392.304(a)(19).

22.    Defendant seeks to sell the Property at a foreclosure sale prior to giving the proper notices as required by Texas law. Therefore, by moving forward with foreclosure proceedings, Defendant threatened to take an action prohibited by law.

23.    As a result of these violations of the TDCA, Plaintiff is entitled to relief provided by Section 392.403, including but not limited to recovery of all actual damages sustained as a result of violations of the TDCA, all actual direct and indirect economic damages, damages for lost time, damages for mental anguish and emotional distress, damages resulting from payment of excess or additional interest, and any consequential damages. Plaintiff is also entitled to exemplary damages and attorneys' fees. *See* Tex. Fin. Code § 392.403.

### FOURTH CAUSE OF ACTION:
### VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT

24.    To the extent not inconsistent herewith, Kellup incorporates by reference all facts alleged above, herein, and below.

25.    The Texas Deceptive Trade Practices Act ("DTPA") grants "consumers" a cause of action for false, misleading, or deceptive acts or practices. *See* Tex. Bus. & Com. Code § 17.50(a)(1). The DTPA defines a "consumer" as "an individual ... who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code § 17.45(4); *Amstadt v. U.S.*

*Brass Corp.*, 919 S.W.2d 644, 649 (Tex.1996). Additionally, the DTPA tie-in statute, § 17.50(h) of the Business & Commerce Code, grants a private right of action under the DTPA to a claimant seeking to recover under the TDCA. *See* Tex. Bus. & Com. Code § 17.50(h); Tex. Fin. Code § 392.404.

26.     Plaintiff is a consumer as defined under the DTPA because Plaintiff's objective in acquiring the Loan from Defendant was the purchase of Plaintiff's home, a good as defined by the DTPA.

27.     Plaintiff's claims under the DTPA arise from the same improper conduct discussed above in Plaintiff's TDCA claims against Defendant.

28.     Defendant's actions in violations of the DTPA caused Plaintiff actual damages, all actual direct and indirect economic damages, damages for lost time, damages for mental anguish and emotional distress, damages resulting from payment of excess or additional interest, and any consequential damages, which are more particularly described in the Damages section below. Plaintiff is also entitled to exemplary damages and attorneys' fees.

## DAMAGES:
## ACTUAL DAMAGES

30.     Plaintiff is entitled to recover his actual damages from Defendant for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

31.     Plaintiff endured stress, anxiety, and loss of sleep as a result of Defendant's misconduct. Accordingly, Plaintiff is entitled to recover mental anguish damages from Defendant for which he pleads in an amount which does not exceed the jurisdictional limits of this Court.

## EXEMPLARY DAMAGES

32.     Plaintiff is entitled to recover his exemplary damages from Defendant for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## ATTORNEYS' FEES

33.     Pursuant to Section 392.403 of the Texas Finance Code, Plaintiff is entitled to recover attorneys' fees reasonably related to the amount of work performed and costs, for all actions in the trial court, the Court of Appeals, and the Texas Supreme Court.

34.     Plaintiff was forced to employ the undersigned attorneys and has agreed to pay them reasonable attorneys' fees for their services. Plaintiff is entitled to recover reasonable attorneys' fees pursuant to Chapter 38 of the Texas Civil Practices & Remedies Code for which Plaintiff pleads in an amount which does not exceed the jurisdictional limits of this Court.

## CONDITIONS PRECEDENT

35.     All conditions precedent to the Plaintiff's right to bring these causes of action have been performed, have occurred, or have been waived.

## REQUEST FOR DISCLOSURES

36.     BOA is hereby requested to disclose to Isiah Kellup, within 50 days of service of this request, the information and material described in Rule 194 of the Texas Rules of Civil Procedure.

## APPLICATION FOR TEMPORARY RESTRAINING ORDER

37.     To the extent not inconsistent herewith, Plaintiff incorporates by reference the allegations made in paragraph 1 through paragraph 36 as if set forth fully herein.

38.     Unless Defendant is enjoined, Plaintiff will suffer probable harm which is imminent and irreparable since Defendant is about to sell Plaintiff's Property at a foreclosure sale on November 5, 2019 thereby depriving Plaintiff of ownership of the Property. Further, Defendant may take legal action to evict or otherwise cause Plaintiff to be dispossessed of the Property. Plaintiff has no adequate remedy at law because the subject matter is real property and any legal remedy of which Plaintiff may avail himself will not give him as complete, equal, adequate, and final a remedy as the injunctive relief sought in this Application.

39.     Therefore, Plaintiff request that this Court issue a Temporary Restraining Order and, thereafter, a Temporary Injunction, to restrain Defendant from selling the real property which is the subject matter of this lawsuit commonly known as 29711 Legends Green Drive, Spring, Texas 77386 as well as from taking any legal action to evict Plaintiff and any other occupants from, or enforcing a writ of possession regarding, the aforementioned property.

40.     Plaintiff further requests that, upon trial on the merits, Defendant be permanently enjoined from the same acts listed in Paragraph 46 above.

41.     Plaintiff is likely to prevail on the merits of the lawsuit as described above.

42.     The granting of the relief requested is not inconsistent with public policy considerations.

## BOND

43.     Plaintiff is willing to post a reasonable temporary restraining order bond and requests that the Court set such bond.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that:

A.   Defendant be cited to appear and answer herein;

B.   The Court conduct a hearing on Plaintiff's Application for Injunctive Relief;

C.   A Temporary Restraining Order be issued restraining Defendant, its agents, employees, officers, directors, shareholders, and legal counsel, and those acting in concert or participation with them who receive actual notice of the Order, by personal service or otherwise, from selling the real property which is the subject matter of this lawsuit and is commonly known as  29711 Legends Green Drive, Spring, Texas 77386 as well as taking any legal action to evict Plaintiff and any other occupants from, or enforcing a writ of possession regarding, the aforementioned property;

D.   A Permanent Injunction be entered enjoining Defendant from the same acts listed in Paragraph C above; and

E.   Upon final hearing or trial hereof, the Court order a judgment in favor of Isiah Kellup against Bank of America for his actual damages, mental anguish, exemplary damages, reasonable attorneys' fees, all costs of court, and such other and further relief, both general and special, at law or in equity, to which Plaintiff may be entitled.

Respectfully submitted,

VILT AND ASSOCIATES – TX, P.C.

By:_____

ROBERT C. VILT
Texas Bar Number 00788586
Email: clay@viltlaw.com
KERRY PRISOCK
Texas Bar Number 24082005
Email: kerry@viltlaw.com
5177 Richmond Avenue, Suite 1142
Houston, Texas 77056
Telephone:      713.840.7570
Facsimile:      713.877.1827
ATTORNEYS FOR PLAINTIFF

CAUSE NO. _____

| | | |
|---|---|---|
| **ISIAH KELLUP** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| v. | § | **MONTGOMERY COUNTY, TEXAS** |
| | § | |
| **BANK OF AMERICA, N.A.** | § | _____ **JUDICIAL DISTRICT** |

## AFFIDAVIT OF ISIAH KELLUP

| | | |
|---|---|---|
| **STATE OF TEXAS COUNTY** | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS** |
| **OF MONTGOMERY** | § | |

BEFORE ME, the undersigned authority, on this day personally appeared Isiah Kellup who, after being duly sworn, deposes and says:

1. My name is Isiah Kellup. I am the Plaintiff in the above-captioned lawsuit. I have read the Original Petition, Application for Injunctive Relief, and Request for Disclosures to which this Affidavit relates and offer this Affidavit in support of the statements and arguments asserted therein.

2. The subject matter of this lawsuit is the real property and the improvements thereon located at 29711 Legends Green Drive, Spring, Texas 77386 (the "Property").

3. My ex-wife, Renata Kellup and I purchased the Property on or about October 19, 2007. During the process of purchasing the Property, I executed a Note in the amount of $196,654.00 as well as a Deed of Trust from Mortgage Electronic Registration Systems, Inc. ("MERS") through an FHA loan (FHA Case No. TX4938450814-703).

4. Upon information and belief, the Note and related Deed of Trust were subsequently transferred to Bank of America, N.A. ("BOA") in which also acts as the loan servicer.

5. I requested loss mitigation assistance from BOA and had attempted to obtain a workable modification on several occasions. BOA failed to comply with federally mandated counseling and loss mediation procedures prior to posting the Property for sale. Furthermore, BOA failed to provide proper notice of acceleration and opportunity to cure pursuant to the Texas Property Code.

6. The latest foreclosure posting has severely affected my personal and professional life. I have trouble sleeping and focusing on simple tasks. My anxiety level as reached a level I have never experienced in my life and my stress level has negatively impacted both my business and my family life.

I have read the foregoing Affidavit and attest that the information contained therein is true and correct in all respects based upon my personal knowledge.

**ISIAH KELLUP**

SUBSCRIBED AND SWORN TO BEFORE ME on this the 31st day of October, 2019.

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

ELKY ASHLEY MENDOZA LOPEZ
Notary ID #129431818
My Commission Expires
May 21, 2021

My commission expires:
May 21, 2021

When Recorded Mail To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
POST OFFICE BOX 10423
VAN NUYS, CALIFORNIA 91410-0423

Escrow/Closing # 1077510-18078
Doc ID # 00018170266910007
Case Number TX4938450814-703
MIN 1000157-0008515836-4

---

[Space Above This Line For Recording Data]

## DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THIS DEED OF TRUST ("Security Instrument") is made on OCTOBER 19, 2007. The Grantor is RENATA KELLUP AND ISIAH J. KELLUP , WIFE AND HUSBAND ("Borrower"). The trustee is G. TOMMY BASTIAN, whose address is 15000 SURVEYOR BOULEVARD, ADDISON, TEXAS 75001 ("Trustee"). The beneficiary is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") (SOLELY AS NOMINEE FOR LENDER, AS HEREINAFTER DEFINED, AND LENDER'S SUCCESSORS AND ASSIGNS). MERS IS ORGANIZED AND EXISTING UNDER THE LAWS OF DELAWARE, AND HAS AN ADDRESS AND TELEPHONE NUMBER OF POST OFFICE BOX 2026, FLINT, MICHIGAN 48501-2026, TELEPHONE (888)679-MERS. COUNTRYWIDE KB HOME LOANS, A COUNTRYWIDE MORTGAGE VENTURES, LLC SERIES, a Limited Liability Corporation organized and existing under the laws of THE STATE OF DELAWARE, and whose address is 27001 AGOURA ROAD, SUITE 200, CALABASAS HILLS, CALIFORNIA 91301 ("Lender"). Borrower owes Lender the principal sum of ONE HUNDRED NINETY-SIX THOUSAND SIX HUNDRED FIFTY-FOUR AND 00/100ths Dollars (U.S.$196,654.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on NOVEMBER 1, 2037. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in MONTGOMERY County, Texas:
LOT TWENTY-TWO (22), IN BLOCK THREE (3), OF LEGENDS RUN, SECTION 5, A SUBDIVISION IN MONTGOMERY COUNTY, TEXAS, ACCORDING TO MAP OR PLAT THEREOF RECORDED IN CABINET Z, SHEET 168, OF THE MAP RECORDS OF MONTGOMERY COUNTY, TEXAS.
Parcel ID Number: 6882-05-06800

Page 1 of 7
GV2003-1.NEW

FHA Texas Deed of Trust - 6/96



1077510 - 078

which has the address of    **29711 LEGENDS GREEN DR., SPRING,**
                            [Street]
Texas                       **77386-3465**         ("Property Address");    [City]
                            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Page 2 of 7
GV2003-2.NEW

FHA Texas Deed of Trust - 6/96

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Page 3 of 7
GV2003-3.NEW

FHA Texas Deed of Trust - 6/96

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within sixty (60) days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to sixty (60) days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

Page 4 of 7

GV2003-4.NEW                                                                                                              FHA Texas Deed of Trust - 6/96

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

Page 5 of 7

FHA Texas Deed of Trust - 6/96

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20. Substitute Trustee. Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts acquired by Lender by assignment or are released by the holder thereof upon payment.

22. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

Page 6 of 7
GV2003-6.NEW

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider                    ☐ Growing Equity Rider

☒ Planned Unit Development Rider        ☐ Graduated Payment Rider

☐ Other(s)
   [specify]

**24. Purchase Money; Vendor's Lien; Renewal and Extension.** [Complete as appropriate]
Vendor's Lien: The Note secured hereby is primarily secured by the Vendor's Lien retained in the Deed of even date herewith conveying the Property to Borrower, which Vendor's Lien has been assigned to Lender, this Deed of Trust being additional security therefore.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

..............................................(Seal)          ..............................................(Seal)
RENATA KELLUP                    -Borrower      ISIAH J. KELLUP                    -Borrower

..............................................(Seal)          ..............................................(Seal)
                                 -Borrower                                        -Borrower

..............................................(Seal)          ..............................................(Seal)
                                 -Borrower                                        -Borrower

STATE OF TEXAS, __HARRIS_____ COUNTY ss:

[Space Below This Line For Acknowledgment]

This instrument was acknowledged before me this _____ day of _____
20____, by RENATA KELLUP and ISIAH J. KELLUP.

My Commission Expires:

.........................................................
(Signature of Officer)
(Title of Officer)

AFTER RECORDING RETURN TO:
FIRST AMERICAN TITLE
WESTCHASE BRANCH
11314 RICHMOND AVE
HOUSTON, TX  77082

Filed and E-Filed for Record
10/31/2019 6:01 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Sommer Brinkley

19-11-14832

CAUSE NO._____

| | | |
|---|---|---|
| **ISIAH KELLUP** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **v.** | § | **MONTGOMERY COUNTY, TEXAS** |
| | § | |
| | § | Montgomery County - 284th Judicial District Court |
| | § | |
| **BANK OF AMERICA, N.A.** | § | _____JUDICIAL DISTRICT |

## TEMPORARY RESTRAINING ORDER

ON THIS DATE Plaintiff's Application for Temporary Restraining Order was heard and considered before this Court. Based upon the pleadings, exhibits, records, and documents filed by Plaintiff and presented to the Court, as well as the arguments of legal counsel at the hearing, IT CLEARLY APPEARS THAT:

A.      Unless Bank of America, N.A., their agents, employees, directors, shareholders, and legal counsel are immediately enjoined and restrained, Bank of America, N.A. will proceed with a foreclosure sale of Plaintiff's property commonly known as 29711 Legends Green Drive, Spring, Texas 77386 and Plaintiff will suffer an immediate and irreparable harm and will have no adequate remedies under the law, and Bank of America, N.A. may commit the foregoing before notice and hearing on Plaintiff's Application for Temporary Injunction.

B.      Plaintiff will suffer an irreparable harm if Bank of America, N.A., their agents, employees, directors, shareholders, and legal counsel are not restrained immediately because Plaintiff will lose his fee simple title and ownership of his Property, which is Plaintiff's residence and homestead and is thus unique and irreplaceable, and there is no adequate remedy at law to grant Plaintiff complete, final, and equitable relief.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Bank of America, N.A., their agents, employees, directors, shareholders, and legal counsel are hereby ORDERED to immediately cease and desist from attempting or proceeding with any foreclosure

sale of Plaintiff's property commonly known as 29711 Legends Green Drive, Spring, Texas

77386 as well as from taking any legal action to evict Plaintiff and any other occupants from, or

enforcing a writ of possession regarding, the aforementioned property. Bank of America, N.A.,

their agents, employees, directors, shareholders, and legal counsel are hereby immediately

enjoined and restrained from the date of entry of this Order until fourteen (14) days hereafter, or

until further ordered by this Court.

**IT IS FURTHER THEREFORE ORDERED, ADJUDGED, AND DECREED** that

Plaintiff's Application for Temporary Injunction be heard on the ____ 15th day of November, 2019

starting at  1:30 ████ /p.m. in the courtroom of the 248th District Court of Montgomery County

located at in the Montgomery County Courthouse, 301 North Main, Conroe, Texas 77301 and that

Bank of America, N.A. is commanded to appear at that time and show cause, if any, why a

temporary injunction should not be issued against Bank of America, N.A..

The Clerk of the above-entitled court shall issue a notice of entry of a temporary

restraining order in conformity with the law and the terms of this Order, to include a copy of this

Order, upon the filing by Plaintiff of the bond hereinafter set.


This Order shall not be effective until Plaintiff deposits with the Montgomery County

District Clerk a bond in the amount of $   1,702.98     in due conformity with applicable law.

ORDERED that this temporary restraining order expires on the   15th   day of

November, 2018 at   1:30 ████ /p.m.

11/5/2019 8:52:36 AM

SIGNED and ENTERED this the _____ day of November, 2018, at _____ a.m./p.m.

_____

JUDGE PRESIDING

Received and E-Filed for Record
10/31/2019 6:01 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Sommer Brinkley

# Request for Service
## Montgomery County District Clerk

19-11-14832

Montgomery County - 284th Judicial District Court

**CASE NUMBER:** _____ **CURRENT COURT:** _____

**Name(s) of Documents to be served:** Petition and TRO _____

_____

_____

**FILE DATE of document(s) to be served:** October 31, 2019 _____ **Month/Day/Year**

**SERVICE TO BE ISSUED ON (Please List Exactly as The Name Appears in The Pleading to Be Served):**

**Issue Service to:** Bank of America, N.A. _____

**Address of Service:** 1999 Bryan Street, Suite 900 _____

**City, State & Zip:** Dallas, TX 75201 _____

**Agent (if applicable):** c/o CT Corporation System _____

☐ **Check here to have citation addressed to wherever the addressee may be found.**

**TYPE OF SERVICE/PROCESS TO BE ISSUED: (Check the appropriate box)**

| | | |
|---|---|---|
| ■ Citation for Personal Service | ☐ Secretary of State Citation ($12.00) | ■ Civil Injunction/TRO |
| ☐ Citation by Posting | ☐ Highway Commission ($12.00) | ☐ Precept |
| ☐ Citation by Publication | ☐ Commissioner of Insurance ($12.00) | ☐ Subpoena |
| ☐ Citation Scire Facias | ☐ Capias (not an E-Issuance) | ☐ Other (Please describe) |
| ☐ Writ of Garnishment | ☐ Temporary Restraining Order (Family) | |
| ☐ Writ of Sequestration | ☐ Temporary Ex Parte Protective Order | _____ |
| ☐ Writ of Attachment | ☐ Notice of Appl. For Protective Order | _____ |
| ☐ Writ of Habeas Corpus | ☐ Notice of Hearing/Show Cause | _____ |

**(See additional forms for Post Judgment Service)**

☐ Notice of Foreign Judgment (UIFSA)

☐ Notice of Foreign Judgment (UCCJEA)  **(by certified mail service)**

☐ Writ of Withholding  **($15.00 - certified mail by District Clerk only)**

☐ Notice of Termination of Child Support ($15.00 - certified mail by District Clerk only)

**SERVICE BY: (Check the appropriate box.)**

☐ E-Issuance by District Clerk (No Service Copy Fees Charged) (Note:) <u>CAPIAS is not an E-Issuance Option</u>

*Citations returned electronically will be e-served through E-file Texas to requesting attorney/pro se.

☐ **ATTORNEY PICK-UP (phone or email contact):** _____

☐ MAIL to attorney at Attorney of Record's address on file in case record.

☐ CERTIFIED MAIL by District Clerk

☐ Regular Mail (only available for Expedited Foreclosures and UIFSA Foreign Judgments

■ **CIVIL PROCESS SERVER - Authorized Person to Pick-up:** _____ **Phone:** _____

☐ **OTHER,** *explain:* _____

**Issuance of Service requested by:**

**Attorney/Party Name:** Kerry Prisock _____ **Bar# or ID:** 24082005 _____

**Mailing Address:** 5177 Richmond Avenue, Suite 1142 _____

**Phone Number:** 713.840.7570 _____

Received and E-Filed for Record
11/13/2019 11:52 AM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Vanessa Medina

## CAUSE NO. 19-11-14832

| | | |
|---|---|---|
| **ISIAH KELLUP** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **MONTGOMERY COUNTY, TEXAS** |
| | § | |
| **BANK OF AMERICA, N.A.** | § | **284TH JUDICIAL DISTRICT** |

## MOTION TO EXTEND TEMPORARY RESTRAINING ORDER

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Isiah Kellup, Plaintiff herein, filing this his Motion to Extend Temporary Restraining Order and would respectfully show the Court as follows:

1.     The Plaintiff's Original Petition was filed on October 31, 2019.

2.     A Temporary Restraining Order was signed in this matter on November 5, 2019.

3.     A Temporary Injunction hearing is currently set for November 15, 2019 at 1:30 p.m.

4.     Plaintiff is still in the process of serving his Original Petition and the Temporary Restraining Order on Defendants.

5.     The existing Temporary Restraining Order expires on November 14, 2019.

6.     Plaintiff requests that the existing Temporary Restraining Order be extended until November 28, 2019 to allow him adequate time to serve his Original Petition on Defendants and for their legal counsel to prepare for a Temporary Injunction hearing.

## CERTIFICATE OF CONFERENCE

I hereby certify that a conference was not held on the merits of this motion because no opposing counsel of record exist at this time in this matter.


/s/ *Kerry L. Prisock*
KERRY L. PRISOCK

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that this Court grant the Motion to Extend Temporary Restraining Order as well as for such other and further relief to which the Court deems appropriate.

Respectfully submitted,

VILT AND ASSOCIATES – TX, P.C.

By: _/s/ Kerry L. Prisock_____
      ROBERT C. VILT
      Texas Bar Number 00788586
      Email: clay@viltlaw.com
      KERRY PRISOCK
      Texas Bar Number 24082005
      Email: kerry@viltlaw.com
5177 Richmond Avenue, Suite 1142
Houston, Texas 77056
Telephone:    713.840.7570
Facsimile:    713.877.1827
ATTORNEYS FOR PLAINTIFF

Received and E-Filed for Record
11/13/2019 11:52 AM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Vanessa Medina

## CAUSE NO. 19-11-14832

| | | |
|---|---|---|
| **ISIAH KELLUP** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **MONTGOMERY COUNTY, TEXAS** |
| | § | |
| **BANK OF AMERICA, N.A.** | § | **284TH JUDICIAL DISTRICT** |

### ORDER GRANTING
### MOTION TO EXTEND TEMPORARY RESTRAINING ORDER

CAME ON THIS DAY for consideration the Motion to Extend Temporary Restraining Order. After considering the Motion and the pleadings in this matter, the Court is of the opinion that the Motion should be GRANTED. It is therefore

ORDERED that the Motion to Extend Temporary Restraining Order is hereby GRANTED. It is further

ORDERED that the existing Temporary Restraining Order in this matter is hereby extended and will expire on November 28, 2019.

SIGNED on this the _____ day of November, 2019.

_____
JUDGE PRESIDING

Received and E-Filed for Record
11/13/2019 11:52 AM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Vanessa Medina

## CAUSE NO. 19-11-14832

| | | |
|---|---|---|
| **ISIAH KELLUP** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **v.** | § | **MONTGOMERY COUNTY, TEXAS** |
| | § | |
| **BANK OF AMERICA, N.A.** | § | **284TH JUDICIAL DISTRICT** |

### <u>SHOW CAUSE ORDER</u>

It is hereby ORDERED that a temporary injunction hearing is set for the _____ day of
_____, 2019 starting at _____ a.m./p.m. to show cause why the temporary

restraining order issued in this matter on November 05, 2019 should not be made a temporary

injunction pending a full trial on the merits.

SIGNED this the _____ day of November, 2019.

_____
JUDGE PRESIDING